UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UPSTATE NEW YORK ENGINEERS HEALTH FUND,
by Daniel P. Harrigan, as Administrator; UPSTATE NEW
YORK ENGINEERS PENSION FUND, by Daniel P.
Harrigan, as Administrator; UPSTATE NEW YORK
ENGINEERS S.U.B. FUND, by Daniel P. Harrigan, as
Administrator; UPSTATE NEW YORK ENGINEERS
TRAINING FUND, by Eugene Hallock and Theron Hogle,
as Trustees; CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS, by
Michael Fanning, as Chief Executive Officer; LOCAL 106
TRAINING AND APPRENTICESHIP FUND, by Daniel
J. McGraw and Eugene Hallock, as Trustees; and
UPSTATE NEW YORK OPERATING ENGINEERS,
LOCAL UNION NO. 158, by Theron Hogle, as President,

          **Plaintiffs,**

v.                5:13-cv-1307 (BKS/DEP)

FMC DEMOLITION, INC., FRANK MICELI JR.,
CONTRACTING, INC., FMC, INC., FRANK MICELI
JR., d/b/a FMC, INC. and FRANK MICELI, Individually
and as an Officer of FMC Demolition, Inc., Frank Miceli
Jr., Contracting, Inc. and FMC, Inc.,

          **Defendants.**
_____

**APPEARANCES:**

Blitman & King LLP
Jennifer A. Clark, of Counsel
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-1415
Attorneys for Plaintiffs

**Hon. Brenda K. Sannes, United States District Court Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

On October 21, 2013, plaintiffs Upstate New York Engineers Health Fund ("Health Fund"), Upstate New York Engineers Pension Fund ("Pension Fund"), Upstate New York Engineers Supplemental Unemployment Benefit Fund ("S.U.B. Fund"), Upstate New York Engineers Training Fund ("Training Fund") (collectively, "Engineers Funds"), Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund"), Local 106 Training and Apprenticeship Fund ("Union Training Fund") and Upstate New York Operating Engineers, Local Union No. 158 ("Union"), filed this action alleging that defendants FMC Demolition, Inc., Frank Miceli Jr., Contracting, Inc., FMC, Inc., Frank Miceli Jr., d/b/a FMC, Inc. (collectively, "FMC Demolition") and Frank Miceli, Jr., individually, violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 and the Labor–Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §§ 185(a), by failing to timely remit fringe benefit contributions and deductions. Dkt. No. 1. Defendants have not answered the complaint or otherwise appeared in this action.

Presently before the Court is plaintiffs' motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. Dkt. No. 13. Plaintiffs seek final judgment pursuant to Rule 54(b) on their first, third and fourth causes of action in the amount of $14,554.37. Dkt. No. 13-7, p. 5. Plaintiffs also seek an order requiring defendants to produce their books and records for plaintiffs' review and audit. Dkt. No. 13-7, p. 20.

# DISCUSSION

## Standard of Review

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded."). Second, under Rule 55(b)(2) the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed.R.Civ.P. 55(b)(2), with a **clerk's certificate of entry of default** . . . a **proposed form of default judgment**, and a copy of the pleading to which no response has been made.").

On November 7, 2013, plaintiffs served defendants with the complaint. Dkt. No. 5. On December 31, 2013, plaintiffs requested a clerk's entry of default pursuant to Rule 55(a) for defendants' "failure to plead or otherwise defend" this action. Dkt. No. 6. As required by Local Rule 55.1, plaintiffs submitted an affidavit showing that: defendants were not infants, in the military or incompetent persons; defendants failed to file an answer or otherwise defend this action; and that plaintiffs properly served the complaint. Dkt. No. 6-1. On January 3, 2014,

3

plaintiffs received a Clerk's Entry of Default. Dkt. No. 8. On April 4, 2014, plaintiffs moved for default judgment pursuant to Rules 54(b) and 55(b). Dkt. No. 13. Although plaintiffs served the motion on defendants, *see* Dkt. No. 14 (certificate of service), defendants have filed no response. Plaintiffs have thus met the procedural requirements and are entitled to an order of default under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

## Liability

By failing to answer the complaint or oppose this motion, defendants are deemed to have admitted the factual allegations in the complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-CV-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5-6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim.").

## Liability Under the Agreement, Trusts and Collections Policy

Pursuant to § 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

According to the first cause of action in the complaint, at all times relevant to this case, defendants were bound to a collective bargaining agreement ("Agreement") with the Union covering a project in Hyde Park, New York ("Hyde Park project"). Dkt. No. 1, p. 6. Defendants

4

were also bound by the Agreements and Declarations of Trust of the Health Fund, Pension Fund, S.U.B. Fund, Training Fund, Central Pension Fund, and Local 106 Training Fund and the Engineers' Funds' Collections Policy (collectively, "Trusts" and "Collections Policy"). Dkt. No. 1, p. 6. The Agreement, Trusts and Collections Policy require defendants to remit contributions "for each hour worked by their employees who performed work covered by the Agreement." Dkt. No. 1, p. 6. They also require defendants "to deduct from each of their employees' wages stipulated sums for each hour worked and pay said amounts to the Union," for Union dues, "Voluntary Political Action Fund" monies, "Defense Fund" monies and "Industry and Political Action Fund" monies. Dkt. No. 1, p. 6. Under the Agreement, Trusts and Collections Policy, defendants must remit their contributions by the fifteenth day of each month. Dkt. No. 1, pp. 6-7. According to the complaint, defendants failed to remit "$6,278.90 in fringe benefit contributions and deductions with regard to the hours worked by employees covered by the Agreement during the period April 2012 . . . through May 2012." Dkt. No. 1, p. 7. Thus, the complaint sufficiently alleges that defendants failed to comply with the terms of the Funds and incurred liability for delinquent contributions. *See United States v. Beam*, No. 6:12-CV-0087, 2012 WL 1802316, at *2, 2012 U.S. Dist. LEXIS 69054, at *4 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that [it] is bound by the terms of the [Agreement] [it] entered into with plaintiff").

### Liability as Fiduciaries

In the third cause of action, plaintiffs assert defendants were "fiduciaries" and "parties in interest with respect to the Plaintiff Funds," and contend that defendants, by withholding contributions, "have dealt with the plan assets in their own interest and/or exchanged property or extended credit from plan assets for their own personal use and benefit," in violation of 29

U.S.C. § 1106. Dkt. No. 1, pp. 10-11. As a result, plaintiffs allege, defendants are liable for $5,713.21 in unpaid contributions. Dkt. No. 1, p. 11. In the fourth cause of action, plaintiffs seek to hold defendant Miceli personally liable, as a fiduciary under 29 U.S.C. §§ 1104, 1006 and 1109, for $5,713.21 in unpaid contributions.[1] Dkt. No. 1, pp. 12-15.

Under ERISA, a "party in interest" means any "fiduciary" of the plan or "an employer any of whose employers are covered by such plan." 29 U.S.C. § 1002(14)(A), (C). ERISA further states that "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). Thus, to establish liability, plaintiffs must "show both that (1) the unpaid contributions were plan assets and (2) [defendants] exercised a level of control over those assets sufficient to make [them] . . . fiduciar[ies]." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). Under ERISA, a fiduciary with respect to a plan is prohibited from causing "the plan to engage in a transaction" if the fiduciary "knows, or should know, that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan[.]" 29 U.S.C. § 1106(a)(1)(D).

According to the complaint, the Trusts for the Engineers Funds provide that: "[t]itle to all monies paid into and/or due and owing to [Plaintiff Plans is] vested in and remain[s] exclusively in the Trustees of the [Plaintiff Plans]; outstanding and withheld contributions constitute plan assets." Dkt. No. 1, p. 12. The Central Pension Fund's Trust states that: "[t]he Trustees are hereby vested with all right, title and interest in and to such moneys and all interest which may be accrued thereon, and are authorized to receive and be paid the same." Dkt. No. 1, p. 12. Thus,

---

[1] Defendants do not seek, in the third and fourth causes of action, to hold defendants liable for unpaid deductions ($565.70). Dkt. No. 1, pp. 11, 14.

6

the complaint sufficiently alleges that unpaid contributions to the Engineers Funds and the Central Pension Fund were plan assets. *See Trustees of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08–CV–0884, 2009 WL 3497493, at *3, 2009 U.S. Dist. LEXIS 101778 at *6 (E.D.N.Y. Sep. 25, 2009) ("While unpaid employer contributions are not ordinarily assets of the plan, the parties to an agreement are free to provide otherwise."), *adopted by Trustees of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, at *1, 2009 U.S. Dist. LEXIS 101772 (E.D.N.Y. Oct. 28, 2009).

Here, according to the complaint, defendants "have received and retained . . . monies which are rightfully assets of the plaintiff Plans" and "by withholding contributions and deductions from the plaintiff Plans" have used those plan assets for "their own personal use and benefit" in violation of ERISA. Dkt. No. 1, p. 11. The complaint alleges that defendant Miceli maintained managerial discretion and control over FMC Demolition and determined which "bills and creditors" FMC Demolition would pay and "how much money" FMC would pay to the plaintiff Funds. Dkt. No. 1, p. 13. It further alleges that defendant Miceli "exercised control over money due and owing to the" plaintiff Funds and "commingled, or permitted the commingling of, assets of the Plaintiff Plans" with FMC Demolitions' "general assets and used, or permitted the use of" plaintiffs' assets to pay other creditors. Dkt. No. 1, p. 13. Thus, the complaint adequately alleges that FMC Demolition and defendant Miceli exercised a level of control over plan assets sufficient to show they were fiduciaries under ERISA and that they breached their duties by withholding contributions. Accordingly, plaintiffs have established that FMC Demolition and defendant Miceli, personally, may be held liable under ERISA.

**Partial Judgment**

Although plaintiffs only seek judgment on three of the five causes of action, Rule 54(b) provides, in pertinent part, that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). There is "no just reason for delay . . . where a plaintiff might be prejudiced by a delay in recovering a monetary award." *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir.1997) (citing *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 11–12 (1980)).

In this case, plaintiffs have shown that there is "no just reason for delay," since the corpus and income of the plaintiff Funds have been reduced. Dkt. No. 13-7, p. 6. However, plaintiffs also request, with respect to their second cause of action, Dkt. No. 1, pp. 8-9, an order requiring defendants to produce their books and records for an audit, while plaintiffs' fifth cause of action seeks a permanent injunction enjoining defendants from further violations of ERISA. *See* Dkt. No. 1, pp. 15-16.[2] These sections of plaintiffs' complaint are not independent claims for relief, but demands for specific types of relief available as a result of defendants' ERISA violations. Thus, having found that plaintiffs are entitled to default judgment on their first, third and fourth causes of action, no claims for relief remain.[3] Accordingly, because plaintiffs have established that they are entitled to judgment in their favor on these claims, the Court grants plaintiffs' motion for default judgment as to liability in its entirety. The Court will address plaintiffs' requests for damages, as well as an order compelling an audit, below.

---

[2] Plaintiffs do not seek injunctive relief at this time.
[3] The Court will, however, retain jurisdiction over this action pending the outcome of the audit.

**Damages**

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup,* 973 F.2d at 158). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). A hearing is not, however, necessary if the record contains detailed affidavits and documentary evidence that enables the Court to evaluate the proposed sum and determine an award of damages. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages."); Rule 55(b)(2) ("The court *may* conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added).

ERISA's civil enforcement provision provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> > (i) interest on the unpaid contributions, or

> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

Here, plaintiffs seek judgment in the amount of $14,554.37. This consists of: $5,713.21 in unpaid contributions, $565.70 in unpaid deductions, $2,057.45 in interest, $2,024.89 in liquidated damages, $3,261.10 in attorneys' and paralegal fees and $932.02 in costs and disbursements. In support of their request for damages, plaintiffs have submitted affidavits, based on personal knowledge, from: Michael Fanning, the Central Pension Fund's chief executive officer (Dkt. No. 13-3), Daniel McGraw, the Union's business manager (Dkt. No. 13-4), Daniel Harrigan, the Upstate New York Engineers Funds' administrator (Dkt. No. 13-5), Linda DeMacy, a legal assistant to plaintiffs' counsel (Dkt. No. 13-1) and Jennifer Clark, plaintiffs' counsel (Dkt. No. 13-2). Attached to the affidavits are a number of exhibits, including the Central Pension Fund's Trust (Dkt. No. 13-3), the Local 106 Training Fund's Trust (Dkt. No. 13-4, pp. 8-93), the Agreement (Dkt. No. 13-4, pp. 50-93), the relevant portions of the Engineers Funds' Trust (Dkt. No. 13-5, pp. 11-63) and the Engineers Funds' Collections Policy (Dkt. No. 13-6, pp. 64-70), defendants' employees' paystubs from the relevant time period and reports showing contributions and deductions FMC Demolition was required to pay based on the paystubs (Dkt. No. 13-6, pp. 71-78), a spreadsheet with the "calculation of the contributions,

deductions, interest and liquidated damages due and owing to each Plaintiff on a monthly basis" (Dkt. No. 13-1, pp. 5-7), and plaintiffs' counsel's billing records and itemization of costs (Dkt. No. 13-2, pp. 47-54). The Court finds that it is not necessary, in this case, to hold an evidentiary hearing because damages are calculable under ERISA, 29 U.S.C. § 1132(g)(2), based upon the detailed affidavits and documentary evidence plaintiffs have provided.

### Unpaid Contributions and Deductions and Interest

Plaintiffs' documentary evidence shows that they are entitled to recover $5,713.21 in delinquent contributions and $565.70 in unpaid deductions. Dkt. No. 13-5, p. 5. Plaintiffs further seek and are "entitled to interest on the unpaid contributions at the rates provided by the Trusts and [Agreements] or, where the Trusts and [Agreements] do not provide a rate, at a rate prescribed by 26 U.S.C. § 6621." *Upstate New York Eng'rs Health Fund v. Ransom*, No. 5:13-CV-1434, 2015 WL 145441, at *4, 2015 U.S. Dist. LEXIS 2965, at *11 (N.D.N.Y. Jan. 12, 2015) (citing 29 U.S.C. § 1132(g)(2)(B)). Pursuant to the Collections Policy, Agreements and Trusts, interest on unpaid contributions to the Engineers Funds is calculated at the rate of two percent per month, Dkt. Nos. 13-6, p. 67, interest on the unpaid Local 106 Training Fund contributions is calculated at the rate prescribed by ERISA, Dkt. No. 13-3, p. 10, and interest on the unpaid Central Pension Fund contributions and the unpaid deductions is calculated at the rate prescribed by ERISA. Dkt. Nos. 13-3, p.10; 14-4, p. 65; 13-6, p. 67. Calculated at the rate of two percent per month, interest on the unpaid Local 106 Training Funds contributions amounts to $1,716,61. Dkt. No. 13-1, p. 6. Calculated at the rate prescribed by ERISA, interest on the unpaid Local 106 Training Fund contributions amounts to $12.04. Id.

Plaintiffs seek interest on the unpaid Central Pension Fund contributions, calculated at the rate of nine percent per annum ($237.94). Dkt. No. 13-3, p. 2. Although Michael Fanning, the

11

Central Pension Fund's chief executive officer, states in his affidavit that interest on unpaid Central Pension Fund contributions is calculated "at the rate of nine percent (9%) per annum," Dkt. No. 13-3, p. 2, the Central Pension Fund Trust states only that it is entitled to interest "to be calculated at the rate prescribed under [26 U.S.C. § 6621]." Dkt. No. 13-3, p. 10. *See* 29 U.S.C. § 1132(g)(2) ("interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."). Plaintiffs also seek a nine percent per annum interest rate on the unpaid deductions ($90.86). Dkt. No. 13-4, p. 5. Although Daniel McGraw, the Union's business manager states, in his affidavit, that plaintiffs are entitled to a nine percent per annum interest rate, Dkt. No. 13-4, p. 5, none of the documents on which he relies support this statement. *See* Dkt. Nos. 13-5, pp. 11-69; 13-6, pp. 1-70. Thus, plaintiffs' request for interest at the rate of nine percent per annum is denied without prejudice to renewal upon providing evidence in admissible form substantiating their entitlement to this rate. Alternatively, plaintiffs may provide revised interest calculations at the rate prescribed by ERISA.

## Liquidated Damages

Plaintiffs also seek, and are entitled to, an award of liquidated damages. *See* 29 U.S.C. § 1132(g)(2)(C). Here, the relevant documents provide for liquidated damages in the amount of twenty percent of the delinquent Engineers Funds and Central Pension Fund contributions. Dkt. Nos. 13-6, p. 67; 13-3, p. 10. Thus, plaintiffs are entitled to an award of liquidated damages in the amount of $2,024.89. Dkt. No. 13-1, p. 7.

## Attorneys' Fees and Costs

Plaintiffs seek and are entitled to recover the attorneys' fees and costs they incurred in connection with their efforts to collect the delinquent contributions in this case. *See* 29 U.S.C. §

1132(g)(2)(D). Plaintiffs request reimbursement for $3,361.10 in attorneys' fees and $932.02 in costs. "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal brackets omitted)). A "reasonably hourly rate" is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Second Circuit has held that in calculating the presumptively reasonable fee, "courts should generally use the hourly rates employed in the district in which the reviewing court sits . . . ." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted).

In support of their request, plaintiffs submitted an affidavit from their attorney, Jennifer Clark of Blitman & King LLP, as well as detailed billing records. According to her affidavit, Ms. Clark is an experienced attorney whose practice has included "numerous actions under ERISA to collect delinquent fringe benefit contributions." Dkt. No. 13-2, p. 4, n.1. The billing records document the dates worked and hours expended and describe the nature of the tasks completed. Dkt. No. 13-2, pp. 47-50. The records indicate that Ms. Clark spent 6.25 hours and that her legal assistants spent 9.85 hours on this matter. Dkt. No. 13-2, p, 50. The Court has reviewed the billing records and finds the time billed by Blitman & King, LLP in connection with this matter to be reasonable. The hourly rates, however, require further discussion.

Plaintiffs request reimbursement at the following rates: $279.00 per hour for work performed by counsel in 2013; $282.00 per hour for work performed by counsel in 2014; $152 per hour for work performed by legal assistants in 2013 and $154.00 per hour for work

13

performed by legal assistants in 2014. Dkt. No. 13-2, p. 50. The relevant factors for the court to consider include "the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case." *Ransom*, 2015 WL 145441 at *5, 2015 U.S. Dist. LEXIS 2965 at *14-15 (citing *Arbor Hill*, 522 F.3d at 184 n.2). In similar ERISA contribution cases, courts have deemed $210 per hour for experienced attorneys and $80 per hour for paralegals to be reasonable, finding they were the "prevailing rate[s] in the community." *I.B.E.W. Local 910 Welfare, Annuity & Pension Funds v. Grayco Elec., Inc.*, No. 7:12–CV–652, 2013 WL 495638, at *4, 2013 U.S. Dist. LEXIS 16396, at *11 (N.D.N.Y. Feb. 7, 2013) (finding the reasonable fees were the prevailing rates in the community of $210 per hour for experienced attorneys and $80 per hour for paralegals); *Laborers' Health & Welfare Fund v. Taylor*, No. 5:11–CV–688, 2012 WL 3201950, at *3 n.3, 2012 U.S. Dist. LEXIS 108979, at *7-10 n.3 (N.D.N.Y. Aug. 3, 2010) (same); *Ransom*, 2015 WL 1454411, at *5, 2015 U.S. Dist. LEXIS 2965, at *15 (same). Plaintiffs submit no evidence demonstrating that a different rate should apply in this case. The Court therefore finds $210 per hour for Ms. Clark and $80 per hour for paralegal work to be reasonable fees in this case. Accordingly, the Court awards $1,312.50 (6.25 hours at the rate of $210 per hour) in attorneys' fees and $788.00 (9.85 hours at the rate of $80 per hour) in paralegal fees. The Court has reviewed plaintiffs' request of $932.03 for costs, and finds it reasonable.

## Audit

Plaintiffs seek an order directing defendants to: "produce their books and records for Plaintiffs' review and audit covering April 1, 2012 to date, to pay the cost and expense of the audit, to pay all auditing fees, and to pay all attorneys' and paralegal fees and costs incurred in

obtaining that audit." Dkt. No. 13-7, p. 20. The Trusts and Collections Policy obligates defendants to submit to an audit of their employment payroll and related records. *See, e.g.*, Dkt. No. 13-5, p. 19-20 ("The Trustees may . . . examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is needed necessary or advisable . . . in connection with the proper administration of the Trust fund.); Dkt. No. 13-6, p. 68 ("The Trustees may at any time examine and copy such books, records, papers or reports of the Employer as they deem necessary to permit them to determine whether the Employer is making full and proper reports and payments to the Funds."). Further, pursuant to the Collections Policy, in the event of an audit, "the Employer will be liable for all auditing fees, attorneys' and paralegal fees, court costs, disbursements and expenses incurred by the Funds in enforcing the Funds' right to audit and/or examine the Employer's books." Dkt. No. 13-6, p. 69. Accordingly, plaintiffs' request for an order directing an audit is granted.

## CONCLUSION

It is therefore

**ORDERED** that plaintiffs' motion for default judgment (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that plaintiffs are awarded judgment against defendants for the sum of $13,064.97, which includes $6,278.91in unpaid contributions and deductions,[4] $1728.65 in interest, $2,024.89 in liquidated damages and $3,032.52 in attorneys' fees and costs, plus interest thereon at the rate provided for by 28 U.S.C. § 1961(a); and it is further

**ORDERED** that plaintiffs are awarded interest for the period from April 4, 2014 to date at the rates specified in this Memorandum-Decision and Order; and it is further

---

[4] As discussed, defendant Miceli is liable to plaintiffs for $5,713.21 in unpaid contributions, but not $565.70 in unpaid deductions.

15

**ORDERED** that defendants are required to produce their books and records for Plaintiffs' review and audit covering April 1, 2012 to date, to pay the cost and expense of the audit, to pay all auditing fees and to pay all attorneys' and paralegal fees and costs incurred in obtaining that audit; and it is further

**ORDERED** that the Court shall retain jurisdiction in this matter until plaintiffs complete their audit of defendants' books and records and apply for entry of judgment on contributions and deductions determined due as a result of the audit; and it is further

**ORDERED** that within thirty (30) days of the completion of the audit, **and in no event later than 90 days after entry of this Memorandum-Decision and Order**, plaintiffs shall move for entry of judgment[5] against defendants for any and all contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest, liquidated damages, costs and fees of the audit and any attorneys' fees and costs; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in plaintiffs' favor on the first, third and fourth causes of action.

**IT IS SO ORDERED.**

Dated: January 28, 2015

Brenda K. Sannes
U.S. District Judge

---

[5] At that time, plaintiffs may submit evidence substantiating their request for an interest rate of nine percent on the unpaid contributions to the Central Pension Fund and unpaid deductions or revised interest calculations at the ERISA rate.